# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SGT. KENDRIA NEWSOME** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | |
| | § | **NO. 4:17-CV-330** |
| **SAN JACINTO COLLEGE DISTRICT,** | § | **(JURY DEMANDED)** |
| | § | |
| *Defendant.* | § | |
| | § | |

## DECLARATION OF SCOTT POERSCHKE FOR
## DEPOSITION OF VICKIE DEL BELLO

1. My name is Scott Poerschke.  I am over the age of twenty-one (21) years, have never been convicted of a felony, and I have personal knowledge of the facts stated herein, which are true and correct.  I am counsel of record for the Plaintiff in the above-styled case.

2. On July 11, 2018, I attended the deposition of one witness presented by the Defendant in this case:  Vickie Del Bello.  I was physically present throughout all portions of the testimony given on that date, and I personally heard all of the testimony given by Vickie Del Bello.

3. I recorded the testimony of Ms. Del Bello using audiovisual, non-stenographic means (a video recorder with microphone to capture all audio as well as video and an audio recorder) - as permitted by Fed. R. Civ. P. 30(b)(3)(A). This method of recording was specifically set forth in Plaintiff's notice of deposition (also in accordance with Fed. R. Civ. P. 30(b)(3)(A)).  Defendant has made no objection to this form of recording, or to the lack of stenographic recording.

4. The audiovisual recordings were captured by, and consist of, several consecutively recorded .mov[1] files.  I have reviewed the audio recordings (in .mov file format) of the deposition testimony in their entireties.  I confirm that these recordings are faithful,

---

[1] "MOV" is a digital multimedia container format used to store video and audio data.

complete, and true and correct recordings of the deposition that was conducted on July 11, 2018.

5. Neither the deponents', nor the attorneys' appearances or demeanors were distorted through this recording technique.

6. The depositions were conducted before an officer authorized to administer oaths in the State of Texas, in accordance with Fed. R. Civ. P. 28.

7. Defendant's counsel of record was present during all portions of the deposition testimony presented on July 11, 2018, and had full opportunity to make objections and examine the witnesses.

8. Complete, true and correct, and unaltered copies of the .mov files of the audiovisual recordings of the depositions were provided on an SD card to Defendant's counsel of record on July 11, 2018, immediately at the conclusion of the deposition.

9. The audiovisual recording of Ms. Del Bello's testimony consists of 8 consecutive .mov files, as follows:

| File | Date/Time | Size | Type |
|---|---|---|---|
| 875G0022.MOV | Jul 11, 2018, 9:37 AM | 717.3 MB | QT movie |
| 875G0023.MOV | Jul 11, 2018, 9:52 AM | 3.71 GB | QT movie |
| 875G0024.MOV | Jul 11, 2018, 10:07 AM | 3.71 GB | QT movie |
| 875G0025.MOV | Jul 11, 2018, 10:22 AM | 3.71 GB | QT movie |
| 875G0026.MOV | Jul 11, 2018, 10:37 AM | 3.71 GB | QT movie |
| 875G0027.MOV | Jul 11, 2018, 10:41 AM | 1.19 GB | QT movie |
| 875G0028.MOV | Jul 11, 2018, 11:08 AM | 3.71 GB | QT movie |
| 875G0029.MOV | Jul 11, 2018, 11:09 AM | 229.8 MB | QT movie |

| Order of .mov file | Length | Flash Drive ("Exhibit") | Transcript |
|---|---|---|---|
| 875G022.MOV | 2 min., 5 sec. | C | Del Bello Exhibit 1 |
| 875G023.MOV | 14 min., 54 sec. | C | Del Bello Exhibit 2 |
| 875G024.MOV | 14 min., 45 sec. | C | Del Bello Exhibit 3 |
| 875G025.MOV | 14 min., 50 sec. | C | Del Bello Exhibit 4 |
| 875G026.MOV | 14 min., 50 sec. | C | Del Bello Exhibit 5 |
| 875G027.MOV | 4 min., 46 sec. | C | Del Bello Exhibit 6 |
| 875G028.MOV | 14 min., 42 sec. | C | Del Bello Exhibit 7 |
| 875G029.MOV | 55 sec. | C | Del Bello Exhibit 8 |

10. A true and correct copy of Ms. Del Bello's testimony is being submitted to the Court in support of *Plaintiff's Response to Defendant's Motion for Summary Judgment* (e-filed July 16, 2018) ("the Motion"). Because video files cannot be submitted via the Court's ECF filing system, a flash storage drive containing the .mov files, and a copy of this declaration, is being separately submitted to the Court in a 6"x9" envelope marked as

"Exhibit C."   Exact copies of these same .mov files have also been provided to Defendant's counsel of record.

11. The files being submitted in support of the Motion are a faithful, true and correct recording of Ms. Del Bello's deposition testimony on July 11, 2018.  It has not been altered in any way. No other edits were made to the content of the video file.  Neither the deponent's, nor the attorneys' appearances, voices, testimony, or demeanors were distorted in any way.

12. Ms. Del Bello confirmed that she is an employee of Defendant San Jacinto College. Her testimony concerned matters within the scope of his employment relationship with the San Jacinto College, which she confirmed.

13. The following is a true and correct transcription of the audiovisual recording of Ms. Del Bello's deposition testimony, as well as a true and correct transcription of what was said at the deposition of Vickie Del Bello on July 11, 2018. The transcription has been marked as "Del Bello Exhibit 1, "Del Bello Exhibit 1," "Del Bello Exhibit 2", "Del Bello Exhibit 3," "Del Bello Exhibit 4," "Del Bello Exhibit 5," "Del Bello Exhibit 6," "Del Bello Exhibit 7," and "Del Bello Exhibit 8," to correspond to the appropriate file name as indicated in the table.

14. I declare under penalty of perjury that the following is true and correct.

SIGNED on the 16th day of July, 2018:


/s/ R. Scott Poerschke_____
R. Scott Poerschke

# DEL BELLO EXHIBIT 1

| 1 | David Monroe: | 00:00 | Going on the record at 9:34 a.m. |
|---|---|---|---|

| 2 | Nicki Basture: | 00:06 | My name is Nicki Basture. My business |
|---|---|---|---|

3                                          address is 2322 Postwood Park Lane, Spring,

2    Nicki Basture:    00:06    My name is Nicki Basture. My business
3                                        address is 2322 Postwood Park Lane, Spring,
4    Texas 77373. My notary ID number is
5    129197958. My notary ID expires on November
6    8, 2020. The deponent is Vickie Del Bello,
7    identified by the defendant as a designated
8    30B6 witness. The deposition is being held
9    on July 18th, I mean July 11, 2018. The
10    time is 9:33 a.m. The deposition is being
11    taken at Thomson and Horton, located at
12    3200 Southwest Freeway, Suite 2000,
13    Houston, Texas 77027. Present is counsel
14    for the plaintiff, R. Scott.

15    Scott Poerschke:    01:10    Poerschke.

16    Nicki Basture:    01:10    Poerschke. Present is the videographer,
17    David Monroe. Present is counsel for the
18    defendant, Jessica N. Witte and/or Arturo
19    Michel.

20    Arturo Michel:    01:24    Michel.

21    Nicki Basture:    01:24    Michel.

22    Arturo Michel:    01:25    And it's "witty" as well. Jessica N. Witte.
23    Just to be ...

24    Nicki Basture:    01:31    Okay. Present is the counsel for the
25    defendant is Jessica N. Witte and/or Arturo
26    Michel. The parties stipulate to hold the
27    deposition per the federal rules of civil
28    procedure. The parties allow me, the
29    officer to lead the deposition and allow
30    Mr. Monroe to record breaks and when the
31    deposition ends. Plaintiff shall
32    immediately tender an SD card containing a
33    copy of the entire deposition to allow the
34    defendant to copy the video of the
35    deposition. Defendant agrees to return the
36    SD card to the plaintiff within five
37    business days after a copy of the
38    deposition has been made.

| | | | |
|---|---|---|---|
| 39<br>40<br>41<br>42 | Nicki Basture: | 02:20 | Would you please raise your right hand. Do you swear to tell the truth, the whole truth and nothing but the truth so help you God? |
| 43 | Vicki Del Bello: | 02:28 | I do. Or yes. |
| 44 | Nicki Basture: | 02:28 | Yes. |
| 45 | Vicki Del Bello: | 02:31 | Yes, okay. |
| 46 | Nicki Basture: | 02:31 | Okay, you have been sworn in. |
| 47 | Vicki Del Bello: | 02:33 | Okay. |
| 48 | Jessica Witte: | 02:33 | Did you want- |
| 49<br>50 | Arturo Michel: | 02:33 | Oh no, that's good. David, let's go off the record just for a second. Just to ... |
| 51 | David Monroe: | 02:41 | Okay, going off the record at 9:36 AM. |
| 52 | | | |

# DEL BELLO EXHIBIT 2

| | | | |
|---|---|---|---|
| 1 | David Monroe: | 00:00 | Going on the record at 9:37 a.m. |
| 2 | Scott Poerschke: | 00:04 | Can you state your name for the record |
| 3 | | | please? |
| 4 | Vickie Del Bell: | 00:04 | Yes, Vickie Del Bello. |
| 5 | Scott Poerschke: | 00:07 | Now Miss Del Bello, is it your |
| 6 | | | understanding that you've been designated |
| 7 | | | as a witness, as a representative of the |
| 8 | | | college here today, is that your |
| 9 | | | understanding? |
| 10 | Vickie Del Bell: | 00:14 | Yes. |
| 11 | Scott Poerschke: | 00:14 | Okay. And you've been designated to testify |
| 12 | | | about certain topics, and just to confirm |
| 13 | | | with Jessica, those are the topics as |
| 14 | | | expressed in a email that you sent to me |
| 15 | | | yesterday, is that correct? |
| 16 | Jessica Witte: | 00:29 | Yes. |
| 17 | Scott Poerschke: | 00:30 | Okay. So I'm just going to go through and |
| 18 | | | talk about- |
| 19 | Vickie Del Bell: | 00:34 | Sure. |
| 20 | Scott Poerschke: | 00:36 | ... Just briefly, what is your position at |
| 21 | | | the college currently. |
| 22 | Vickie Del Bell: | 00:41 | I'm the Director of Employee Relations |
| 23 | | | Performance Management and Benefits. |
| 24 | Scott Poerschke: | 00:45 | Okay. And you've been a director for how |
| 25 | | | long? |
| 26 | Vickie Del Bell: | 00:50 | Seven years. |
| 27 | Scott Poerschke: | 00:53 | And that would be going back seven years |
| 28 | | | from the present, which is approximately? |
| 29 | Vickie Del Bell: | 00:59 | 2011. |

| 30 | Scott Poerschke: 01:00 | Okay. And you've been the director of ... |
| 31 | | been in ... of your title in Human |
| 32 | | Resources since 2011 for seven years, is |
| 33 | | that correct? |

| 34 | Vickie Del Bell: 01:09 | So just to clarify ... I'm sorry. |

| 35 | Scott Poerschke: 01:11 | That's okay. |

| 36 | Vickie Del Bell: 01:13 | I was the Director of Employee Relations |
| 37 | | and Performance Management since 2011. In |
| 38 | | 2013 they added the benefits piece. |

| 39 | Scott Poerschke: 01:29 | All right, so Employee Relations now was |
| 40 | | the second part? |

| 41 | Vickie Del Bell: 01:32 | Performance management, and that was in |
| 42 | | 2011. And then in '13 they added benefits. |

| 43 | Scott Poerschke: 01:49 | And what are your responsibilities as |
| 44 | | Employee Relations? |

| 45 | Vickie Del Bell: 01:54 | So within that role, we guide leaders, |
| 46 | | guide employees. If they have questions |
| 47 | | regarding the policies, or they have |
| 48 | | concerns- |

| 49 | Scott Poerschke: 02:06 | Just to clarify, you say they, do you mean |
| 50 | | employees? |

| 51 | Vickie Del Bell: 02:10 | ... The employees and leaders, right, all |
| 52 | | employees. |

| 53 | Scott Poerschke: 02:12 | And when you mean leaders, are you talking |
| 54 | | about supervisors? |

| 55 | Vickie Del Bell: 02:14 | Mm-hmm (affirmative). Supervisors, |
| 56 | | managers, other directors. |

| 57 | Scott Poerschke: 02:23 | And that includes the college police |
| 58 | | department, is that correct? |

| 59 | Vickie Del Bell: 02:26 | Yes. |

| 60 | Scott Poerschke: 02:29 | And in terms of, you understand that the |
| 61 | | college police department has different |
| 62 | | ranks, is that your understanding? |

| 63 | Vickie Del Bell: 02:33 | Yes. |

Del Bello Exhibit 2                                                        2

| | | |
|---|---|---|
| 64<br>65<br>66 | Scott Poerschke: 02:34 | Okay. And when you say employees, are you generally, in terms of the police department, are you referring to officers? |
| 67<br>68<br>69<br>70 | Vickie Del Bell: 02:42 | Well, everyone's an employee of the college actually, we're all employees. So, but it would encompass all levels of employees, if that makes sense. |
| 71<br>72<br>73<br>74 | Scott Poerschke: 02:53 | And then so, that would include, it is my understanding that at the police department there is rank of officer, sergeant, lieutenant, and then chief, is that right? |
| 75 | Vickie Del Bell: 03:03 | Correct. |
| 76<br>77 | Scott Poerschke: 03:05 | So you would be responsible for interacting with all of those individuals? |
| 78 | Vickie Del Bell: 03:09 | Yes. |
| 79<br>80<br>81 | Scott Poerschke: 03:10 | And what sort of services do you provide to officers, sergeants, lieutenants and even the chief himself? |
| 82<br>83<br>84<br>85<br>86 | Vickie Del Bell: 03:18 | If they have concerns that they would like to discuss, or want guidance, we also help them understand the policies or the procedures that may be applicable in their situation. |
| 87<br>88 | Scott Poerschke: 03:30 | Okay. And is that the policies of the board of the college? |
| 89 | Vickie Del Bell: 03:34 | Yes. |
| 90<br>91 | Scott Poerschke: 03:39 | But the chief also has his own policies, is that right? |
| 92 | Vickie Del Bell: 03:42 | Yes. |
| 93<br>94 | Scott Poerschke: 03:44 | Are you responsible for interpreting the policies of the Chief of Police? |
| 95 | Vickie Del Bell: 03:47 | No. |
| 96<br>97<br>98 | Scott Poerschke: 03:52 | Okay, and then what ... the second sort of job title that you had, that was performance, what was it called? |

Del Bello Exhibit 2                                                          3

| 99 | Vickie Del Bell: 03:57 | Management. |
| 100 | Scott Poerschke: 03:58 | What is involved in that. |
| 101<br>102<br>103<br>104<br>105<br>106<br>107<br>108 | Vickie Del Bell: 03:59 | So that is actually how our evaluations are handled throughout the college. So we manage the process of we ... all of our evaluations are done electronically, and we send those out each year to all of the employees, and we manage that process to insure that they're done accurately and completed. |
| 109<br>110 | Scott Poerschke: 04:23 | Right, and I think you have kind of a unique system. What's the name of it? |
| 111<br>112 | Vickie Del Bell: 04:27 | So we have Cornerstone. So that's we're currently using. |
| 113<br>114<br>115<br>116<br>117 | Scott Poerschke: 04:32 | And as the way I understand it, it has to do, when you're doing employee evaluations, that the supervisor gives some sort of input and rates the employee, is that right? |
| 118 | Vickie Del Bell: 04:42 | Yes. |
| 119<br>120 | Scott Poerschke: 04:43 | And then also the employee also provides a reading as well, correct? |
| 121 | Vickie Del Bell: 04:47 | Yes. |
| 122<br>123<br>124 | Scott Poerschke: 04:47 | And then they use some sort of formula to give some sort of overall score for various categories, is that right? |
| 125 | Vickie Del Bell: 04:54 | Correct. |
| 126<br>127<br>128 | Scott Poerschke: 04:55 | Okay. And is that Cornerstone product that's utilized for all employees, including the police department? |
| 129 | Vickie Del Bell: 05:02 | Yes. |
| 130<br>131<br>132<br>133 | Scott Poerschke: 05:04 | And does that employee evaluation, when that is actually conducted, does it require the supervisor to sign off or that or approve it? How does that work? |

| | | |
|---|---|---|
| 134<br>135<br>136<br>137<br>138<br>139<br>140<br>141<br>142<br>143<br>144 | Vickie Del Bell: 05:17 | Yes. So first the employee does the, or completes their self-evaluation. It then moves to their leader. So the leader completes their portion of the evaluation. And once all those steps have been completed, and it has gone through a review process, at that point then the leader then signs off, makes any additional comments, and then forwards it back to the employee for signature after meeting with the employee to discuss the evaluation. |
| 145<br>146 | Scott Poerschke: 05:51 | And how often are those evaluations done per year? |
| 147 | Vickie Del Bell: 05:55 | Once. |
| 148<br>149 | Scott Poerschke: 05:56 | And is there a set time that that's done per year? |
| 150<br>151<br>152 | Vickie Del Bell: 05:59 | Yes. So for staff and administrators, the self-evaluation begins in April of each year. |
| 153<br>154 | Scott Poerschke: 06:10 | And then would cover a one year period going back to April of the following year? |
| 155 | Vickie Del Bell: 06:14 | Correct. Of the previous year, yes. |
| 156<br>157<br>158<br>159 | Scott Poerschke: 06:17 | What about for ... and let's just try to stick with ... because this case deals with the police department, what about for officers? |
| 160 | Vickie Del Bell: 06:26 | It's all- |
| 161<br>162<br>163<br>164<br>165 | Scott Poerschke: 06:26 | And I'm only just clarifying one other thing. When you say staff and administrators, in terms of the police department, are you referring to sergeants, lieutenants, and then even the chief? |
| 166<br>167<br>168<br>169<br>170<br>171 | Vickie Del Bell: 06:37 | So, they're broken out into two different categories, because we have faculty. So those are on a different schedule. So all staff and administrators fall on this schedule of the April, right. Which is everyone that's not faculty. |

| 172<br>173<br>174 | Scott Poerschke: 06:54 | So in terms of the police department, staff and administrators, that's what affable to all members of the police department? |
|---|---|---|
| 175 | Vickie Del Bell: 07:01 | Yes sir. |
| 176 | Scott Poerschke: 07:02 | Does that even apply to Chief Caldwell? |
| 177 | Vickie Del Bell: 07:04 | Yes. |
| 178<br>179<br>180 | Scott Poerschke: 07:04 | And did it apply ... I mean did it, I mean I'm asking in terms of did ... was Chief Caldwell evaluated? |
| 181 | Vickie Del Bell: 07:13 | Yes. |
| 182 | Scott Poerschke: 07:14 | And who was Chief Caldwell evaluated by? |
| 183<br>184 | Vickie Del Bell: 07:17 | So, he's evaluated by the vice chancellor of physical affairs. |
| 185<br>186<br>187 | Scott Poerschke: 07:22 | And then who is currently in that ... who is currently the vice chancellor of physical affairs? |
| 188 | Vickie Del Bell: 07:29 | Teri Zamora. |
| 189 | Scott Poerschke: 07:36 | And then who was previous to Teri Zamora? |
| 190 | Vickie Del Bell: 07:39 | Chet Lewis. |
| 191 | Scott Poerschke: 07:44 | And previous to Chet? |
| 192 | Vickie Del Bell: 07:45 | Ken Lynn. |
| 193<br>194 | Scott Poerschke: 07:51 | And then how long did Ken Lynn work at the department. |
| 195<br>196 | Vickie Del Bell: 07:55 | I don't know. He was there when I started, I don't know. |
| 197<br>198<br>199 | Scott Poerschke: 08:06 | In terms of the review by the vice chancellor of physical affairs, does that only apply to the chief's evaluation? |
| 200 | Vickie Del Bell: 08:14 | Yes. |
| 201<br>202 | Scott Poerschke: 08:18 | For lieutenants, is their review by the chief for their evaluations? |

| | | | |
|---|---|---|---|
| 203 | Vickie Del Bell: | 08:24 | Yes. |
| 204 | Scott Poerschke: | 08:28 | What about for sergeants? |
| 205 | Vickie Del Bell: | 08:29 | That's by the lieutenants. |
| 206 | Scott Poerschke: | 08:32 | Right, if they're lieutenants I think you- |
| 207 | Vickie Del Bell: | 08:34 | They evaluate the sergeants. |
| 208 209 | Scott Poerschke: | 08:37 | Okay, so for the sergeant level, they get reviewed by lieutenants? |
| 210 | Vickie Del Bell: | 08:41 | Yes sir. |
| 211 212 213 | Scott Poerschke: | 08:41 | And then the sergeants get reviewed by the ... oh I'm sorry, the officers get reviewed by the sergeants? |
| 214 | Vickie Del Bell: | 08:48 | Yes. |
| 215 216 | Scott Poerschke: | 08:51 | For sergeant level employees, is there any review by the chief of police? |
| 217 | Vickie Del Bell: | 09:01 | No. |
| 218 219 220 221 222 | Scott Poerschke: | 09:01 | What about for the ... well obviously for lieutenants there would be. Okay. And then, I think you talked about a third, benefits, does that refer to benefits for the officers of the police department? |
| 223 224 | Vickie Del Bell: | 09:16 | For everyone, right. We have state benefits thorough ERS. Uh huh (affirmative). |
| 225 226 | Scott Poerschke: | 09:29 | And does the employee a portion of the salary to ERS? |
| 227 228 | Vickie Del Bell: | 09:34 | That is based on what their election of benefits are. |
| 229 | Scott Poerschke: | 09:37 | So that would be based upon the employee? |
| 230 | Vickie Del Bell: | 09:40 | Yes. |
| 231 | Scott Poerschke: | 09:43 | And then you match that obviously? |

| | | |
|---|---|---|
| 232<br>233<br>234 | Vickie Del Bell: 09:46 | Right. The state matches, and also the college also in certain circumstances, based on the benefit, also contributes. |
| 235<br>236<br>237<br>238 | Scott Poerschke: 09:56 | So you would be, I guess, primarily responsible for communicating with the state and making sure that those benefits are properly allocated? |
| 239<br>240<br>241<br>242 | Vickie Del Bell: 10:07 | Well, the state actually tells us what they're doing, and then we just relay that information to all the employees, if there's any changes, or ... |
| 243 | Scott Poerschke: 10:16 | Okay. |
| 244 | Vickie Del Bell: 10:16 | Mm-hmm (affirmative). |
| 245<br>246<br>247 | Scott Poerschke: 10:17 | All right. So when you say that the benefits portion, we were added that job responsibility in 2013? |
| 248 | Vickie Del Bell: 10:25 | Yes sir. |
| 249<br>250<br>251 | Scott Poerschke: 10:28 | But as in terms of employee review relations, you had that in 2000, going back to 2011. |
| 252 | Vickie Del Bell: 10:33 | Yes sir. |
| 253<br>254 | Scott Poerschke: 10:35 | And then for performance management, you had that back in 2011, is that right? |
| 255 | Vickie Del Bell: 10:37 | Yes. Mm-hmm (affirmative). |
| 256 | Scott Poerschke: 10:40 | Now, I'd like to turn to the first topic. |
| 257<br>258<br>259<br>260<br>261<br>262<br>263<br>264<br>265<br>266 | Jessica Witte:   10:43 | Scott, can I just state for the record that I object to any testimony that's outside of what you've designated as a topic as being a corporate representative admission, and that it's given as a fact witness. So anything about the structure of the HR department, or about the structure of the evaluation system, it wasn't one of the notice topics. So her testimony on that was a fact witness. |
| 267<br>268 | Scott Poerschke: 11:02 | Well, it was her job duties as well. I'm just trying to establish her job duties. |

| | | |
|---|---|---|
| 269 | | Okay. So the first topic ... have you had a |
| 270 | | chance to review the notice and the topics |
| 271 | | that you've been designated on? |
| | | |
| 272 | Vickie Del Bell: 11:02 | Yes. |
| | | |
| 273 | Scott Poerschke: 11:32 | Now, describe to me your knowledge with |
| 274 | | regards to the college has asserted this |
| 275 | | defense of, defendant exercised reasonable |
| 276 | | care to prevent or correct promptly any |
| 277 | | harassing or discriminatory conduct? What |
| 278 | | in terms of this case, and of course I |
| 279 | | represent Sergeant Newsome ... so with |
| 280 | | regards to Sergeant Newsome, what is your |
| 281 | | understanding of the reasonable care to |
| 282 | | prevent or correct any harassing or |
| 283 | | discriminatory conduct, has been done by |
| 284 | | the college? |
| | | |
| 285 | Vickie Del Bell: 12:04 | So, always, if we've been made aware, or |
| 286 | | obviously leadership is aware, they do |
| 287 | | follow all of our policies and procedures |
| 288 | | that we have regarding our EEO, or anything |
| 289 | | that we have spelled out within our |
| 290 | | concerns and grievances policies and |
| 291 | | procedures. |
| | | |
| 292 | Scott Poerschke: 12:27 | What reasonable care has the college |
| 293 | | provided to Sergeant Newsome? |
| | | |
| 294 | Vickie Del Bell: 12:35 | As far as, the policies, or directing her |
| 295 | | in the policies? Is that what your speaking |
| 296 | | of? |
| | | |
| 297 | Scott Poerschke: 12:42 | I assume that would probably encompass |
| 298 | | that. |
| | | |
| 299 | Vickie Del Bell: 12:45 | Okay. So, Sergeant Newsome, all of our |
| 300 | | policies are online. They're also reviewed |
| 301 | | by ... that she can go to leadership, she |
| 302 | | could come to human resources to inquire |
| 303 | | about any concerns she would have, and we |
| 304 | | would direct her to the appropriate policy |
| 305 | | and procedure to follow. And if she needs |
| 306 | | assistance with determining the steps, we |
| 307 | | also guide all employees in the steps, and |
| 308 | | how to proceed through that process. |
| | | |
| 309 | Scott Poerschke: 13:22 | What contact has Sergeant Newsome had with |
| 310 | | the HR department? |

311   Vickie Del Bell: 13:28        So, going back, very limited contact.

312   Scott Poerschke: 13:33        Let's say from a period of January 2014 to
313                                 the time she was terminated. You're aware
314                                 she was terminated in the fall or December
315                                 of 2015, is that right?

316   Vickie Del Bell: 13:45        Correct. December.

317   Scott Poerschke: 13:47        Let's focus on this two year period. Do you
318                                 recall any time that Sergeant Newsome came
319                                 to the employee relations department?

320   Vickie Del Bell: 13:56        Yes. I recall one time that she came to the
321                                 employee relations department. She ... that
322                                 was I'm trying to think when that was. Oh,
323                                 I think I can tell you.

324   Scott Poerschke: 13:56        Do you recall the ... okay.

325   Vickie Del Bell: 14:17        Right here. This, would have been, in
326                                 August of 2015.

327   Scott Poerschke: 14:27        And you just referred to what document?

328   Vickie Del Bell: 14:31        This is a document, it saves some note that
329                                 were written by the manager of employee
330                                 relations, Tracey Willis.

331   Scott Poerschke: 14:41        And that's Bates number document 79?

332   Vickie Del Bell: 14:43        79, yes.

333   Scott Poerschke: 14:45        Describe to me what happened in August of
334                                 2015.

335   Vickie Del Bell: 14:48        I was not the one that met with Ms.
336                                 Newsome, Sergeant Newsome. She did-

337

# DEL BELLO EXHIBIT 3

1  Vickie Del Bello:          00:00 ... I did see her, as she came into
2                             the office, but I was exiting for a
3                             meeting, and Ms. Willis met with her.

4  Scott Poerschke: 00:07     What was your understanding of what was
5                             discussed?

6  Vickie Del Bello:          00:10 At the time, she, Sergeant Newsome,
7                             was complaining that ... She believed,
8                             according to the note that I read, was that
9                             everything was an investigation and why
10                            couldn't others just speak to her about the
11                            incidents, instead of complaining about
12                            her.

13  Scott Poerschke: 00:36    I'm sorry. Again, I'm not following you.
14                            You said that she was coming in about what
15                            again?

16  Vickie Del Bello:         00:43 That she was coming in, she was
17                            concerned that she felt like there was
18                            always a complaint against her, and from
19                            somebody in the police department, and she
20                            could not understand why the leadership
21                            just couldn't talk to her about it, instead
22                            of treating it as an investigation.

23  Scott Poerschke: 01:01    Okay. Are you aware if she named anyone
24                            specific?

25  Vickie Del Bello:         01:07 No.

26  Scott Poerschke: 01:08    And, you said that was Tracey Willis is the
27                            one she spoke with?

28  Vickie Del Bello:         01:12 Yes.

29  Scott Poerschke: 01:12    Okay. Are you aware of any basis for any
30                            harassing or discriminatory contact
31                            experienced by Sergeant Newsome?

32  Vickie Del Bello:         01:27 No.

Del Bello Exhibit 3                                                  1

| | | |
|---|---|---|
| 33<br>34<br>35<br>36<br>37 | Scott Poerschke: 01:30 | And, other than the August 2015 time period where Sergeant Newsome came into the employee relations, or the human resources department, are you aware of any other times which she came? |
| 38<br>39<br>40<br>41 | Vickie Del Bello: | 01:48 I spoke with Sergeant Newsome one additional time and that would've been when we were issuing findings letter of an investigation that had been conducted. |
| 42<br>43<br>44<br>45<br>46 | Scott Poerschke: 02:02 | And, correct me if I'm wrong, that had to do with the findings with regards to the incident that occurred at the going away party for an office name Rachel Amador. Is that right? |
| 47<br>48<br>49 | Vickie Del Bello: | 02:11 Not Rachel. It was Raul? I'm not sure of the name but it's not Rachel. It's a male. |
| 50 | Scott Poerschke: 02:20 | Okay. What was the name of the male? |
| 51<br>52 | Vickie Del Bello: | 02:23 His last name is Amador, but it's not Rachel. |
| 53<br>54<br>55 | Scott Poerschke: 02:26 | Okay. Maybe I got the name wrong. I apologize. I kept thinking it was a woman. Okay, all right. So, Officer Amador? |
| 56 | Vickie Del Bello: | 02:33 Mm-hmm (affirmative). |
| 57<br>58 | Scott Poerschke: 02:34 | And, I think you also ... You did some investigation in that, is that correct? |
| 59<br>60<br>61 | Vickie Del Bello: | 02:39 I did not do any of the interviews of the officers, but the findings document was presented to me. |
| 62<br>63<br>64 | Scott Poerschke: 02:48 | Okay. And, what's the findings documents that was determined by ... I think, Gretchen Rapp, is that right? |
| 65 | Vickie Del Bello: | 02:56 Correct. |
| 66<br>67 | Scott Poerschke: 02:57 | Okay. And, I guess, then, did you approve those findings or how did that work? |
| 68<br>69 | Vickie Del Bello: | 03:08 So, there's really not an approval, it's their findings and then, based on |

Del Bello Exhibit 3                                              2

| | | |
|---|---|---|
| 70 | | those findings, then we relay that |
| 71 | | information. |
| 72 | Scott Poerschke: 03:19 | Okay. And, who did you relay that |
| 73 | | information to? |
| 74 | Vickie Del Bello: | 03:21 We actually did speak to Sergeant |
| 75 | | Newsome. |
| 76 | Scott Poerschke: 03:24 | Okay. And, what did you tell Sergeant |
| 77 | | Newsome? |
| 78 | Vickie Del Bello: | 03:27 So, we told Sergeant Newsome, |
| 79 | | basically, based on the amount of |
| 80 | | interviews that were conducted, 14, that |
| 81 | | people did identify that she had used |
| 82 | | excessive profanity at the party and had |
| 83 | | discussed information regarding at least |
| 84 | | one of her direct reports. And, I believe |
| 85 | | all of that is in the findings document, if |
| 86 | | you want me to refer you to that. |
| 87 | Scott Poerschke: 04:00 | Sure, what Bates number is that? |
| 88 | Vickie Del Bello: | 04:02 Let's see, is it in 12, do you know? I |
| 89 | | think it might be. And, here it is. |
| 90 | Scott Poerschke: 04:24 | What Bates number document is that? |
| 91 | Vickie Del Bello: | 04:26 464. |
| 92 | Scott Poerschke: 04:32 | And, you relayed that Bates number document |
| 93 | | 464, you relayed that to Chief Taylor, is |
| 94 | | that right? |
| 95 | Vickie Del Bello: | 04:38 We actually did speak with Sergeant |
| 96 | | Newsome on that. |
| 97 | Scott Poerschke: 04:42 | Okay. And, how did ... |
| 98 | Vickie Del Bello: | 04:44 But, yes, then we did tell that, speak |
| 99 | | about it, with Chief Taylor, yes. |
| 100 | Scott Poerschke: 04:48 | And, you were only in charge of the |
| 101 | | findings. |
| 102 | Vickie Del Bello: | 04:51 Correct. |
| 103 | Scott Poerschke: 04:51 | Not the actually discipline? |

104  Vickie Del Bello:              04:53 Correct.

105  Scott Poerschke: 04:54        Are you aware of any discipline that
106                                 Sergeant Newsome received?

107  Vickie Del Bello:              04:56 I've seen the discipline, yes.

108  Scott Poerschke: 04:59        Okay and what was your understanding of the
109                                 discipline?

110  Vickie Del Bello:              05:01 The understanding was that they did
111                                 issue her ... And, let me check, I believe
112                                 it was a final corrective action notice.

113  Scott Poerschke: 05:15        And, what Bates number document is that?

114  Vickie Del Bello:              05:18 This one is about her appeal, but let
115                                 me see. Find her ... Nope, that one's
116                                 not...I was looking for the actual ...

117  Scott Poerschke: 05:44        Take your time, no rush.

118  Vickie Del Bello:              05:45 ... Corrective action, but it's all
119                                 the other ... Would this be in the previous
120                                 tab? Nope.

121  Jessica Witte:   05:59        It's Bates 525.

122  Scott Poerschke: 06:14        525?

123  Jessica Witte:   06:15        Mm-hmm (affirmative).

124  Scott Poerschke: 06:18        Okay.

125  Vickie Del Bello:              06:20 Yeah, it's still in this tab, but 525.
126                                 I have 22, 24. Yes.

127  Scott Poerschke: 06:38        Okay, so then, the times that you
128                                 interacted with Sergeant Newsome was one
129                                 time in August 2015, is that right?

130  Vickie Del Bello:              06:49 No.

131  Scott Poerschke: 06:50        Or, she came into the office ...

132  Vickie Del Bello:              06:52 Ms. Willis did.

133  Scott Poerschke: 06:53        ... And, she talked to Ms. Willis in August
134                                 2015.

Del Bello Exhibit 3                                              4

| | | |
|---|---|---|
| 135 | Vickie Del Bello: | 06:55 Correct. |
| 136 137 138 139 | Scott Poerschke: 06:56 | Okay. And then, you actually then spoke with Sergeant Newsome about the incident involving Amador and that was approximately ... |
| 140 141 142 | Vickie Del Bello: | 07:08 Looks like that would have been in September when we talked to her. Yes, September of 14. |
| 143 144 145 146 | Scott Poerschke: 07:18 | And, corrected to say that, regarding the incident, the Amador incident, HR investigated the findings on that, is that right? |
| 147 | Vickie Del Bello: | 07:30 Yes. |
| 148 149 | Scott Poerschke: 07:31 | How is it that HR investigated those findings? |
| 150 151 152 153 154 155 156 157 158 159 160 161 162 163 164 165 166 | Vickie Del Bello: | 07:36 So, at times, that does occur. So, for instance, she, because some of the complaint that was brought forward were things that she had accusations against her lieutenant, and so, then, the next person then that would have had to do the investigation would have been the chief. And, at times, HR will do that investigation so that the employee then has other avenues within that concerns policy procedure to speak with others if they believe that something wasn't done fairly. So, in this case, by us doing the investigation, then she was able then to speak with the chief and then she was able to go to the Vice Chancellor of Fiscal Affairs. |
| 167 168 | Scott Poerschke: 08:33 | Okay. And, I think at that time, that would have been Ken Lynn, is that right? |
| 169 | Vickie Del Bello: | 08:41 Yes, it was. |
| 170 171 | Scott Poerschke: 08:42 | Now, is it a two step process, you get a chief first and then you go to Ken Lynn? |
| 172 173 | Vickie Del Bello: | 08:45 Correct. You keep going up your leadership chain. |

174  Scott Poerschke: 08:48      Okay. And, the accusations against the
175                              lieutenant, was that Lieutenant Pigeon?

176  Vickie Del Bello:          08:55 Yes.

177  Scott Poerschke: 09:02      And, what were the accusations that were
178                              made against Lieutenant Pigeon?

179  Vickie Del Bello:          09:07 So, her comment ... Do you want me to
180                              state the comment?

181  Scott Poerschke: 09:13      Sure, whatever your understanding of it is.

182  Vickie Del Bello:          09:15 So, my understanding was that whoever
183                              brought forward the complaint, stated that,
184                              at the party, that Sergeant Newsome stated
185                              that Lieutenant Gamboa was Lieutenant
186                              Pigeon's bitch. And so, therefore, we could
187                              not have the other lieutenants investigate
188                              that.

189  Scott Poerschke: 09:44      You recall some comments that are also
190                              alleged to have been made by Sergeant
191                              Newsome indicating that Pigeon was sexist?

192  Vickie Del Bello:          09:51 Yes, that was also one of the
193                              comments.

194  Scott Poerschke: 09:54      Okay. Anything else regarding Lieutenant
195                              Pigeon?

196  Vickie Del Bello:          10:23 -regarding ... I believe that was all.

197  Jessica Witte:   10:35      The findings are at 480, if you wanna look
198                              at them.

199  Vickie Del Bello:          10:38 480? I was looking at the other letter
200                              that we have. Here we go. So, there's the
201                              sexist and there's that comment.

202  Scott Poerschke: 10:56      Okay, so it was ...

203  Vickie Del Bello:          10:57 That's all I'm seeing. The only other
204                              things that were in here were within the
205                              findings that was presented to me was
206                              Sergeant Newsome did admit that ...

207  Scott Poerschke: 11:13      I'm sorry, you said findings, but you mean
208                              allegations?

| | | |
|---|---|---|
| 209<br>210 | Vickie Del Bello: | 11:16 No, this was in the findings document, just writing ... |
| 211<br>212<br>213<br>214<br>215 | Scott Poerschke: 11:19 | Let me go back and try to clarify. What were the allegations? I understand that there were two against Lieutenant Pigeon, Newsome said that Gamboa was Lieutenant Pigeon's bitch, is that right? |
| 216 | Vickie Del Bello: | 11:31 Mm-hmm (affirmative). That's correct. |
| 217<br>218<br>219 | Scott Poerschke: 11:32 | And then, another allegation was Sergeant Newsome called Lieutenant Pigeon sexist, is that right? |
| 220<br>221 | Vickie Del Bello: | 11:38 Yeah, it was "Effing sexist," is what it says in here. |
| 222<br>223 | Scott Poerschke: 11:42 | Okay. And then, what other allegations were made against Sergeant Newsome? |
| 224 | Jessica Witte:    11:48 | The complaint is at 475. |
| 225<br>226 | Vickie Del Bello: | 11:50 You're talking about just the complaint in general? |
| 227<br>228<br>229<br>230<br>231 | Scott Poerschke: 11:53 | Right, what were the actual ... What were the things that you investigated? Or, actually, it would be Gretchen Rapp investigated under your guidance. Is that the way it worked? |
| 232 | Vickie Del Bello: | 12:05 Correct. |
| 233 | Scott Poerschke: 12:06 | Okay. |
| 234<br>235 | Vickie Del Bello: | 12:06 So, the complaint is on 475, that was submitted, is number 475, is the complaint. |
| 236<br>237 | Scott Poerschke: 12:22 | So, I've got two against Pigeon, was there anybody else involved? |
| 238<br>239<br>240 | Vickie Del Bello: | 12:26 Yes, that one of the complaints was that Sergeant Newsome also stated that Officer McCandless is a worthless officer. |
| 241 | Scott Poerschke: 12:37 | Okay. |

242  Vickie Del Bello:           12:45 And then, of course, let's see. Those
243                              appear to be ... And, of course, then just
244                              the general complaint of profanity.

245  Scott Poerschke: 13:07      Against any, just ...

246  Vickie Del Bello:           13:08 That she was using profanity, just
247                              very loudly at the party.

248  Scott Poerschke: 13:19      Okay. So, with regards to the first
249                              allegation of Lieutenant Pigeon's, that
250                              Sergeant Newsome called, or referred to
251                              Sergeant Gamboa as Lieutenant Pigeon's
252                              bitch, did you find that to be sufficient
253                              evidence to find that that did occur?

254  Vickie Del Bello:           13:39 No.

255  Scott Poerschke: 13:42      With regards to the second allegation of
256                              Lieutenant Pigeon, referring to him as a
257                              "Fucking sexist," did you find sufficient
258                              evidence to find that was true?

259  Vickie Del Bello:           14:07 Let me find ... I'm gonna find that
260                              second letter. No, you're talking about
261                              using the profanity when referring to
262                              Lieutenant Pigeon?

263  Scott Poerschke: 14:33      Right, it was calling a ... I'm sorry, a
264                              "Fucking sexist."

265  Vickie Del Bello:           14:36 Right. Says only one of the witnesses
266                              that were interviewed heard you use
267                              profanity when discussing Lieutenant
268                              Pigeon, so we did not have findings for
269                              that.

270  Scott Poerschke: 14:44      Okay.

271

Del Bello Exhibit 3                                                    8

# DEL BELLO EXHIBIT 4

| | | |
|---|---|---|
| 1 | Scott Poerschke: 00:00 | |
| 2 | Scott Poerschke: 00:00 | |
| 3<br>4 | | What about for Officer Chandless referring to the worthless comment? |
| 5<br>6 | Vickie Del Bello: | 00:07 So within 464, which is the complaint in what we gave to Kendria ... |
| 7 | Scott Poerschke: 00:19 | Wait, that would be ... |
| 8 | Vickie Del Bello: | 00:19 ... in September. |
| 9<br>10<br>11 | Scott Poerschke: 00:20 | Let me just clarify. It's not a complaint. Four sixty-four though is the, is your investigatory findings. Is that right? |
| 12 | Vickie Del Bello: | 00:26 Right, regarding the complaint. |
| 13 | Scott Poerschke: 00:28 | Okay. |
| 14<br>15<br>16<br>17<br>18<br>19<br>20 | Vickie Del Bello: | 00:31 It says, "Based on the information that we gathered, we have determined that you behaved inappropriately for an employee of the college. You spoke negatively about an officer and a lieutenant in front of four, in front of other officers and at least one of your direct reports." So yes. |
| 21<br>22 | Scott Poerschke: 00:48 | Okay, so with regards to Chandress, the worthless comment, that would be yes. |
| 23 | Vickie Del Bello: | 00:55 Mr. Oh, McCandless? |
| 24 | Scott Poerschke: 00:56 | I'm sorry, McCandless. |
| 25<br>26 | Vickie Del Bello: | 00:57 Mm-hmm (affirmative). That would be yes. |
| 27<br>28<br>29 | Scott Poerschke: 01:01 | Okay. Then with regards to the profanity comment, just in general profanity, was there sufficient evidence to find that? |

| 30 | Vickie Del Bello: | 01:09 Yes. |
|---|---|---|

31  Scott Poerschke: 01:18        Okay. So then you personally spoke with
32                                Sergeant Newsome in September 2014. Did you
33                                give her a copy of Bates number document
34                                464?

35  Vickie Del Bello:            01:30 Yes.

36  Scott Poerschke: 01:32       Okay, and how did that conversation go?

37  Vickie Del Bello:            01:33 It went very well. We presented our
38                                findings, gave her a copy of the letter,
39                                asked her if she had any questions and she
40                                said, "No." It was a very, very short
41                                conversation.

42  Scott Poerschke: 01:47       Okay, and then I assume then at that time
43                                period in September 2014 she had not
44                                received any discipline from Chief Taylor.
45                                Is that right?

46  Vickie Del Bello:            01:59 Oh, I don't know. I don't know if she
47                                had received prior discipline.

48  Scott Poerschke: 02:06       I'm talking about ... Let me just clarify
49                                the question. I'm talking about discipline
50                                related to the Amador incident. You
51                                testified earlier that she did receive some
52                                discipline from Chief Taylor.

53  Vickie Del Bello:            02:18 Mm-hmm (affirmative).

54  Scott Poerschke: 02:19       That document was ...

55  Vickie Del Bello:            02:21 I think you said that was 525, right?

56  Scott Poerschke: 02:22       Yeah, it's Bates numbered document 525.

57  Vickie Del Bello:            02:25 That would have been September 12th.
58                                It would have been after our meeting with
59                                Kendria.

60  Scott Poerschke: 02:31       So then after when you gave Sergeant
61                                Newsome the investigatory findings as
62                                reflected on Bates number document 464,
63                                then she had an opportunity then to then go
64                                meet with the chief. Is that right?

65  Vickie Del Bello:            02:45 Correct.

Del Bello Exhibit 4                                                      2

```
66    Scott Poerschke: 02:46    Okay. And you don't have any knowledge
67                              about if she actually met with the chief.
68                              Is that right?

69    Vickie Del Bello:        02:52 No.

70    Scott Poerschke: 02:52    Okay. And then, Sergeant Newsome then in
71                              that instance then had the ability to
72                              appeal what exactly to Ken Lynn? Did she
73                              have the ability to appeal the findings or
74                              did she have the ability to appeal the
75                              discipline?

76    Vickie Del Bello:        03:10 The discipline.

77    Scott Poerschke: 03:10    Okay. Okay, so she did not have the ability
78                              to appeal the investigatory findings?

79    Vickie Del Bello:        03:22 Correct.

80    Scott Poerschke: 03:23    Okay, so those were set in stone. Is that
81                              right?

82    Vickie Del Bello:        03:23 Correct.

83    Scott Poerschke: 03:26    Okay. Are you aware in this instance if
84                              Officer ... I'm sorry. Are you aware in
85                              this instance if Sergeant Newsome appealed
86                              the discipline given to her by Chief Taylor
87                              to Ken Lynn?

88    Vickie Del Bello:        03:42 Yes, she did.

89    Scott Poerschke: 03:46    Okay. Are you aware of what occurred
90                              regarding that?

91    Vickie Del Bello:        03:50 Yes. Within the information that I
92                              have, Mr. Lynn did uphold the corrective
93                              action notice.

94    Scott Poerschke: 04:01    Okay.

95    Vickie Del Bello:        04:04 That was given to her by Chief Taylor.

96    Scott Poerschke: 04:13    Okay. All right, so then other than in
97                              August 2015 with Tracey Willis and then
98                              again you personally in September 2014, did
99                              you have any other interaction involving
100                             Sergeant Newsome?
```

Del Bello Exhibit 4                                                        3

| | | |
|---|---|---|
| 101 | Vickie Del Bello: | 04:30 Yes. The only other interaction that I |
| 102 | | had with her was when Chief Taylor |
| 103 | | terminated her employment. |

| | | |
|---|---|---|
| 104 | Scott Poerschke: 04:43 | Okay, and I think that would have occurred |
| 105 | | around November. |

| | | |
|---|---|---|
| 106 | Vickie Del Bello: | 04:50 It would have been in November of |
| 107 | | 2015. |

| | | |
|---|---|---|
| 108 | Scott Poerschke: 04:53 | How were you involved in that? Or how was |
| 109 | | the employee relations department? |

| | | |
|---|---|---|
| 110 | Vickie Del Bello: | 04:57 Right, so any time that there is a |
| 111 | | termination of any employee, a member of |
| 112 | | the employee relations team does sit in on |
| 113 | | that, and I did sit in on Kendria's |
| 114 | | termination. |

| | | |
|---|---|---|
| 115 | Scott Poerschke: 05:12 | Okay, and how, what was involved in that? |

| | | |
|---|---|---|
| 116 | Vickie Del Bello: | 05:17 Chief Taylor brought her in and had |
| 117 | | her termination letter prepared and gave |
| 118 | | her a copy of the letter and went over it |
| 119 | | with her, and then asked her for her weapon |
| 120 | | and badge, et cetera. |

| | | |
|---|---|---|
| 121 | Scott Poerschke: 05:39 | Okay, and what was your understanding of |
| 122 | | the reasons why she was being terminated? |

| | | |
|---|---|---|
| 123 | Vickie Del Bello: | 05:47 Well, let's refer to the termination |
| 124 | | letter, which, let me see here, which |
| 125 | | section that is in. I need to look at the |
| 126 | | table of contents. Tab 17. |

| | | |
|---|---|---|
| 127 | Scott Poerschke: 05:59 | At least you have tabs. |

| | | |
|---|---|---|
| 128 | Vickie Del Bello: | 06:14 Well, that's helpful. Okay, so this is |
| 129 | | 698 is her notice of termination, and so |
| 130 | | within this letter Chief Taylor is speaking |
| 131 | | about the allegations that she brought |
| 132 | | forward against Sergeant Birch and |
| 133 | | identified Sergeant Vaughn as the one that |
| 134 | | gave her the information and that the |
| 135 | | investigation substantiated that she |
| 136 | | falsely accused Sergeant Birch of reading |
| 137 | | her statement. And based on all of that |
| 138 | | that it calls into question her |
| 139 | | credibility, judgment, professionalism and |
| 140 | | her ability to serve as a leader. And then |

141                                        that was the basis for the decision to
142                                          terminate her employment.

143 Scott Poerschke: 07:20    Okay. But HR wasn't involved in that
144                                          investigation. Is that right?

145 Vickie Del Bello:        07:26 Correct.

146 Scott Poerschke: 07:28    Other than the investigation regarding
147                                          Rachel Amador, was HR involved in any other
148                                          investigation involving Sergeant Newsome?

149 Vickie Del Bello:        07:34 No.

150 Scott Poerschke: 07:40    How was Sergeant Newsome at the meeting?

151 Vickie Del Bello:        07:46 It's been a while ago, but I think
152                                          that naturally she was upset, but did not
153                                          say a lot, just turned over all of her
154                                          equipment to Chief Taylor.

155 Scott Poerschke: 08:03    Okay. Were there any incidents other words?

156 Vickie Del Bello:        08:07 No.

157 Scott Poerschke: 08:08    Okay. Now, did you ever have any other
158                                          interaction other than these face-to-face
159                                          meetings? And I guess even the August 2015
160                                          one was very brief because you were saying
161                                          you just kind of left the HR Department.

162 Vickie Del Bello:        08:26 Correct.

163 Scott Poerschke: 08:30    And then you had actually met with her in
164                                          December 2014 and then you met with her
165                                          again November 2015. Are there any other
166                                          ... Did the HR Department and Sergeant
167                                          Newsome ever cross paths again other than
168                                          those three time periods?

169 Vickie Del Bello:        08:48 Not on an individual basis, but we
170                                            would often cross paths with her at events
171                                          or always at our performance management
172                                          validation meetings. Since she was a
173                                          sergeant she was there to present her
174                                          employees, so yes, we encountered her, but
175                                          never in a one-on-one situation.

176 Scott Poerschke: 09:11    Okay. Any other than those? Other than one-
177                                          on-one meetings, the three of which we've

| | | |
|---|---|---|
| 178 | | already gone over, would you have any |
| 179 | | further communications with Sergeant |
| 180 | | Newsome relating to any aspect of her job? |
| | | |
| 181 | Vickie Del Bello: | 09:31 Not that I recall. |
| | | |
| 182 | Scott Poerschke: 09:34 | Is that from the standpoint of the Human |
| 183 | | Resources Department? |
| | | |
| 184 | Vickie Del Bello: | 09:40 Yes. |
| | | |
| 185 | Scott Poerschke: 09:50 | Okay, so I think that gets to then topic |
| 186 | | number what I've identified as six. It |
| 187 | | talks about all grievances raised or filed |
| 188 | | by Newsome including all of Newsome's |
| 189 | | attempts to reach out to the college |
| 190 | | administration regarding the relationship |
| 191 | | between her and Lieutenant Pigeon. Then I |
| 192 | | guess then that would be other than what's |
| 193 | | already testified to there's none |
| 194 | | additional. Is that right? |
| | | |
| 195 | Vickie Del Bello: | 10:12 Not with Human Resources. |
| | | |
| 196 | Scott Poerschke: 10:14 | Okay. That's all I'm asking from the |
| 197 | | standpoint ... |
| | | |
| 198 | Vickie Del Bello: | 10:14 Sure. |
| | | |
| 199 | Scott Poerschke: 10:18 | ... of Human Resources. |
| | | |
| 200 | Vickie Del Bello: | 10:19 Okay. |
| | | |
| 201 | Scott Poerschke: 10:27 | Okay, and we've kind of hit on this topic |
| 202 | | number 10. I think we've kind of hit on |
| 203 | | this already, but it has to do with the |
| 204 | | appeals process involved for a police |
| 205 | | officer to appeal any finding of officer |
| 206 | | misconduct by the Chief of Police or his |
| 207 | | designated representative. |
| | | |
| 208 | Vickie Del Bello: | 10:41 Mm-hmm (affirmative). |
| | | |
| 209 | Scott Poerschke: 10:44 | I think you've already testified to the |
| 210 | | fact and I don't want you to keep |
| 211 | | reiterating testimony over again, but it's |
| 212 | | my understanding then is that officer |
| 213 | | misconduct can be appealed to Ken rr the |
| 214 | | Vice Chancellor ... |

| 215 | Vickie Del Bello: | 10:58 Of School Affairs. |
|---|---|---|

| 216 | Scott Poerschke: 11:00 | And in that instance that was Chief ... I'm |
| 217 | | sorry, that was Ken Lynn. Is that right? |

| 218 | Vickie Del Bello: | 11:04 That's correct. |

| 219 | Scott Poerschke: 11:05 | Okay. And then Sergeant Newsome then in |
| 220 | | that instance involving Amador, then |
| 221 | | appealed to Ken Lynn. |

| 222 | Vickie Del Bello: | 11:20 Yes. |

| 223 | Scott Poerschke: 11:23 | And that was a two stage process. First it |
| 224 | | goes to the chief and then it goes to Ken |
| 225 | | Lynn. Is that right? |

| 226 | Vickie Del Bello: | 11:28 Yes. |

| 227 | Scott Poerschke: 11:30 | And what is ... When Ken Lynn, he has the |
| 228 | | ability then to overturn it, overturn the |
| 229 | | discipline. Is that correct? |

| 230 | Vickie Del Bello: | 11:41 Correct. |

| 231 | Scott Poerschke: 11:42 | Okay. And then what does Ken Lynn do when |
| 232 | | that appeal happens? |

| 233 | Vickie Del Bello: | 11:48 So they typically conduct their own, |
| 234 | | if there's people that they feel that they |
| 235 | | need to speak with, they read all of the |
| 236 | | findings information and then they also |
| 237 | | have a one-on-one with the employee that is |
| 238 | | requesting the appeal. |

| 239 | Scott Poerschke: 12:11 | Okay, so it's a two step process. They read |
| 240 | | all of the findings and that would have |
| 241 | | been essentially the file from HR in this |
| 242 | | instance involving Amador of all of the |
| 243 | | statements that were taken. Is that right? |

| 244 | Vickie Del Bello: | 12:22 Yes. |

| 245 | Scott Poerschke: 12:23 | Okay. Anything else that Ken Lynn would |
| 246 | | read over? |

| 247 | Vickie Del Bello: | 12:28 No. |

Del Bello Exhibit 4                                                      7

248 Scott Poerschke: 12:29     Okay, and then, the second part of that
249                            would then be for Sergeant Newsome to meet
250                            with Ken Lynn one-on-one?

251 Vickie Del Bello:         12:39 Correct.

252 Scott Poerschke: 12:40     If Sergeant Newsome had met, well, I would
253                            guess in this instance it's your
254                            understanding that Sergeant Newsome did
255                            meet with Ken Lynn, right?

256 Vickie Del Bello:         12:47 Yes.

257 Scott Poerschke: 12:47     But you weren't present at that meeting.

258 Vickie Del Bello:         12:49 No.

259 Scott Poerschke: 12:49     Was any member of the HR Department present
260                            at that meeting with Ken Lynn?

261 Vickie Del Bello:         12:54 No.

262 Scott Poerschke: 12:55     That would only be Ken Lynn and Sergeant
263                            Newsome. Is that right?

264 Vickie Del Bello:         12:58 Correct.

265 Scott Poerschke: 12:58     Okay. Then I guess at that point that would
266                            be to get some sort of face and face.

267 Vickie Del Bello:         13:04 Well, to listen to their side of the
268                            story also.

269 Scott Poerschke: 13:07     Okay. Anything else after? Then Ken Lynn
270                            can overturn the discipline or uphold it.
271                            In this instance with Amador he upheld it.
272                            Is there any other then appeal process
273                            after that?

274 Vickie Del Bello:         13:21 No.

275 Scott Poerschke: 13:22     Okay. So it's Ken Lynn's determination is
276                            final?

277 Vickie Del Bello:         13:25 That's correct.

278 Scott Poerschke: 13:26     Okay. And that was the appeal process
279                            involved from say the time period of
280                            January 2014 to December of 2015?

| | | |
|---|---|---|
| 281 | Vickie Del Bello: | 13:26 Yes. |
| 282 283 | Scott Poerschke: 13:36 | Okay, because I know it's changed several times. |
| 284 285 | Vickie Del Bello: | 13:41 Yes. Well, yes prior to ... There was a time it was different. |
| 286 287 288 | Scott Poerschke: 13:46 | Right. I think there was something about it went to a committee and all other stuff. There was a lot of steps. |
| 289 290 | Vickie Del Bello: | 13:50 Well, that's based on ... That's not based on this process, but. |
| 291 | Scott Poerschke: 13:57 | That was a prior process in place, right? |
| 292 | Vickie Del Bello: | 13:59 Not for a concern, no. |
| 293 294 295 | Scott Poerschke: 14:01 | Okay. All right, let's talk about that real quick. So the incident involving Rachel Amador, that was classified as a concern? |
| 296 297 | Vickie Del Bello: | 14:13 That was classified as a complaint, a concern, yes. |
| 298 299 300 301 | Scott Poerschke: 14:17 | Okay. Are you aware of any other concerns involving Sergeant Newsome from the time period of January 2014 to the time she was terminated? |
| 302 303 304 | Vickie Del Bello: | 14:41 Well, in reading the information, there was a concern that was brought forward regarding Officer Mendoza. |
| 305 | | |

# DEL BELLO EXHIBIT 5

| | | |
|---|---|---|
| 1<br>2 | Vickie Del Bello: | 00:00 I believe during that timeframe. What timeframe did you say, again? |
| 3 | Scott Poerschke: 00:04 | Yeah. It was basically 14 and 15. |
| 4<br>5<br>6<br>7 | Vickie Del Bello: | 00:06 Yes. It's my understanding that based on documentation that there was an additional concern complaint brought forward regarding Officer Mendoza. |
| 8<br>9 | Scott Poerschke: 00:20 | Okay. But the HR department didn't have any involvement in that, is that correct? |
| 10 | Vickie Del Bello: | 00:24 Correct. We did not. |
| 11<br>12<br>13<br>14 | Scott Poerschke: 00:31 | Anything with regards ... The appeals process or the procedures relating to a concern? Is there any other steps we haven't talked about? |
| 15 | Vickie Del Bello: | 00:45 No. |
| 16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | Scott Poerschke: 01:03 | And then for topic number 11, it talks about perennial misconduct or corrective action appealed by Newsome ... Knowledge of those appeals taken by her prior to her termination. The only one then involving Sergeant Newsome, but the HR department had anything to do with is the Rachel Amador thing. |
| 24<br>25 | Vickie Del Bello: | 01:25 Right. The only one that we were a part of, correct. |
| 26<br>27 | Scott Poerschke: 01:28 | Okay. What is the difference between a concern and a grievance? |
| 28<br>29<br>30<br>31<br>32<br>33<br>34 | Vickie Del Bello: | 01:39 A concern would be a complaint you have complained against your leadership. You have complaint against other employees. It could be bullying. That falls under a concern. For a grievance, that's against a protected class or against a board specific policy. |

| | | |
|---|---|---|
| 35<br>36 | Scott Poerschke: 02:11 | Protected class ... You mean you're talking about ... Like title seven stuff? |
| 37 | Vickie Del Bello: | 02:15 Yes, title seven. |
| 38 | Scott Poerschke: 02:17 | You're talking about sex? |
| 39 | Vickie Del Bello: | 02:19 Yes. |
| 40 | Scott Poerschke: 02:19 | And that would be? |
| 41 | Vickie Del Bello: | 02:21 Race, gender ... Yes. |
| 42<br>43<br>44 | Scott Poerschke: 02:23 | A grievance in this instance would be any sort of complaint of racial discrimination or retaliation or those kind of things? |
| 45 | Vickie Del Bello: | 02:34 Correct, based on that. |
| 46<br>47 | Scott Poerschke: 02:38 | That would be any employee against another employee? |
| 48 | Vickie Del Bello: | 02:41 Yes. |
| 49<br>50 | Scott Poerschke: 02:41 | And then concern also would be employee versus another employee, is that right? |
| 51 | Vickie Del Bello: | 02:47 Yes. |
| 52<br>53 | Scott Poerschke: 02:51 | Okay. And then a specific board policy, what exactly would that encompass? |
| 54 | Vickie Del Bello: | 02:57 For instance, like our EEO policy. |
| 55 | Scott Poerschke: 03:02 | What's the EEO policy? |
| 56<br>57<br>58<br>59<br>60 | Vickie Del Bello: | 03:09 I'm sure it's in here, too. For instance, it's on our equal opportunity for the institution. I'm sure it's in the book, also. Do we need to refer to that in the book? |
| 61<br>62 | Scott Poerschke: 03:25 | I think it's probably on the website, right? |
| 63 | Vickie Del Bello: | 03:26 Yes. |
| 64<br>65 | Jessica Witte:   03:27 | It's the same policy manual I've sent you the link to. |

Del Bello Exhibit 5                                              2

```
66    Scott Poerschke:03:29       Okay. That's what I thought.

67    Vickie Del Bello:           03:31 And that's the one where it's speaking
68                                about equal opportunity for all students,
69                                employees, and applicants without regard to
70                                their national origin, citizenship, age,
71                                disability, pregnancy.

72    Scott Poerschke:03:43       You mean EEO ... Equal employment
73                                opportunity? Similar to the EOC type stuff?

74    Vickie Del Bello:           03:48 Right.

75    Scott Poerschke:03:48       Okay. Anything else about a grievance?

76    Vickie Del Bello:           03:51 No.

77    Scott Poerschke:04:04       Then who makes the determination to
78                                classify something as a concern versus a
79                                grievance?

80    Vickie Del Bello:           04:09 Well, we follow the policies, and
81                                that's looked at with leadership and also
82                                with human resources.

83    Scott Poerschke:04:16       That would be human resources and then ...
84                                That would be you, I guess.

85    Vickie Del Bello:           04:21 Or a member of my team, yes.

86    Scott Poerschke:04:23       Okay. It would be your human resources
87                                department as well as you said leadership,
88                                but in this case, it would be Chief Taylor?

89    Vickie Del Bello:           04:31 Yes.

90    Scott Poerschke:04:32       Or his subsequent chief, Chief Caldwell. Is
91                                that right?

92    Vickie Del Bello:           04:32 Correct.

93    Scott Poerschke:04:36       Okay. Do you call any discussion with Chief
94                                Taylor regarding the classification of a
95                                concern versus a grievance involving that
96                                incident relating with Officer Amador
97                                involving Sergeant Newsome?

98    Vickie Del Bello:           04:57 I don't recall having a conversation
99                                with him about that.
```

Del Bello Exhibit 5                                                    3

| | | |
|---|---|---|
| 100<br>101<br>102<br>103<br>104<br>105<br>106<br>107 | Scott Poerschke: 05:22 | Okay. Move on to the next topic. It has to do with the factual basis for the following statement made by the college. Defendant denies any suggestion that the command staff or administration were not supportive of equal opportunity under the law for Sergeant Newsome. What is your understanding of the factual basis of that? |
| 108<br>109<br>110<br>111<br>112 | Vickie Del Bello: | 05:42 My understanding is that there was not a complaint of that from Sergeant Newsome, and that we abide by our equal opportunity policy, all members and employees of the college. |
| 113<br>114<br>115 | Scott Poerschke: 06:00 | Okay. You're saying that there was no complaint filed by Sergeant Newsome? What exactly? |
| 116 | Vickie Del Bello: | 06:09 Of discrimination. |
| 117<br>118<br>119<br>120 | Scott Poerschke: 06:10 | Okay. What about the comment that was made that the party ... That had to do with calling Lieutenant Pigeon " a fucking sexist"? |
| 121 | Vickie Del Bello: | 06:32 We didn't have findings of that. |
| 122<br>123 | Scott Poerschke: 06:34 | Okay. Would that be categorized as a complaint of discrimination based upon sex? |
| 124<br>125<br>126 | Vickie Del Bello: | 06:50 No. It could be looked at differently if it was a pervasive comment occurred more than once, but no, not in that instance. |
| 127<br>128 | Scott Poerschke: 06:58 | Okay. One comment in this instance doesn't rise to the level? |
| 129 | Vickie Del Bello: | 07:02 Correct. |
| 130 | Scott Poerschke: 07:03 | Who made that determination? |
| 131<br>132<br>133 | Vickie Del Bello: | 07:08 There were no findings, so there wasn't a determination to make regarding that comment. |
| 134<br>135<br>136<br>137 | Scott Poerschke: 07:12 | No, I'm not talking about findings. I'm talking about who is the person that made the determination to say that a comment calling Lieutenant Pigeon "a fucking |

138                          sexist," was not sufficient to rise to the
139                          level of being investigated as a
140                          discrimination complaint?

141   Vickie Del Bello:      07:31 I don't know.

142   Scott Poerschke: 07:39   Anything else about the factual basis of
143                          that the defendant denies any suggestion
144                          that the command staff or administration
145                          were not supportive of equal opportunity
146                          under the law?

147   Vickie Del Bello:      07:53 No, other than all of our leadership
148                          and employees follow our policies and
149                          procedures.

150   Scott Poerschke: 08:00   And that would be the policy and procedures
151                          with regards to concerns. Is that right?

152   Vickie Del Bello:      08:06 Concerns, and then also really all of
153                          our procedures, including our EEO policy.

154   Scott Poerschke: 08:13   Okay. Just to clarify, that would be
155                          policies with regards to concerns, is that
156                          right?

157   Vickie Del Bello:      08:20 We have a policy regarding concerns
158                          and grievances, yes.

159   Scott Poerschke: 08:24   Right. And then you expect your employees
160                          follow the policy with relating to
161                          concerns, is that right?

162   Vickie Del Bello:      08:31 Right. And how they file a complaint,
163                          yes.

164   Scott Poerschke: 08:33   Okay. But that also means how it is
165                          investigated and all of those things?

166   Vickie Del Bello:      08:37 Correct.

167   Scott Poerschke: 08:37   Okay. And then also that your employees
168                          follow the policy of regards to grievances,
169                          is that right?

170   Vickie Del Bello:      08:44 Correct.

171   Scott Poerschke: 08:45   Other than a concern versus grievances, is
172                          there anything else that of complaints or
173                          officer misconduct are classified as? It's

      Del Bello Exhibit 5                                              5

| 174 |  | either a concern or a grievance, is that |
| 175 |  | right? There's nothing else. |
| 176 | Vickie Del Bello: | 08:59 Correct. That is how they're |
| 177 |  | classified. |
| 178 | Scott Poerschke: 09:01 | Okay. The next topic is the factual basis |
| 179 |  | for the statement, to the extent that |
| 180 |  | plaintiff is suggesting Taylor took actions |
| 181 |  | contrary to equal opportunity under the |
| 182 |  | law. The allegation is denied. What's the |
| 183 |  | factual basis of that statement? |
| 184 | Vickie Del Bello: | 09:25 Regarding that, there was not a |
| 185 |  | complaint of discrimination by Sergeant |
| 186 |  | Newsome. |
| 187 | Scott Poerschke: 09:44 | That you know of in the HR department, is |
| 188 |  | that correct? |
| 189 | Vickie Del Bello: | 09:46 That's correct. |
| 190 | Scott Poerschke: 09:47 | Okay. Anything else there? |
| 191 | Vickie Del Bello: | 09:56 No. |
| 192 | Scott Poerschke: 10:12 | Okay. In terms of the ... There's another |
| 193 |  | statement that has to do here ... The |
| 194 |  | factual basis for the following statement. |
| 195 |  | Defendant admits that its reasons and |
| 196 |  | concerns were legitimate and not |
| 197 |  | pretextual. What is the college's factual |
| 198 |  | basis for that? |
| 199 | Vickie Del Bello: | 10:30 Can you read that again? |
| 200 | Scott Poerschke: 10:32 | Sure. I'm not trying to trip you up. |
| 201 | Vickie Del Bello: | 10:35 No. Which one are you looking at? |
| 202 | Scott Poerschke: 10:38 | It's number S. |
| 203 | Vickie Del Bello: | 10:49 Basically that the college is saying |
| 204 |  | that the concerns regarding Sergeant |
| 205 |  | Newsome were legitimate concerns that |
| 206 |  | needed to be investigated. |
| 207 | Scott Poerschke: 11:02 | Okay, and what concerns were those? |

| | | |
|---|---|---|
| 208<br>209<br>210<br>211<br>212<br>213<br>214 | Vickie Del Bello: | 11:05 The concerns that were brought forward<br>... The complaints that were brought<br>forward by Sergeant Birch, the one that was<br>investigated regarding Officer Amador's<br>party. And then any other concerns that<br>were investigated independently with the<br>police department. |
| 215<br>216 | Scott Poerschke: 11:28 | Okay. But that's outside the scope of the<br>HR department, right? |
| 217 | Vickie Del Bello: | 11:31 Correct. |
| 218<br>219<br>220<br>221<br>222<br>223<br>224 | Scott Poerschke: 11:32 | Okay. T then talks about the factual basis<br>... The circumstances pertaining to the<br>determination were independently<br>investigated by Sandra Ramirez, vice<br>president of human resources, and further<br>reviewed by Dr. Brenda Hellyer, chancellor<br>of the San Jacinto College district. |
| 225 | Vickie Del Bello: | 11:57 Correct. |
| 226<br>227 | Scott Poerschke: 12:01 | I guess ... Then is Sandra Ramirez your<br>boss? |
| 228 | Vickie Del Bello: | 12:06 Yes. |
| 229<br>230 | Scott Poerschke: 12:06 | Okay. Dr. Brenda Hellyer is the chancellor,<br>is that right? |
| 231 | Vickie Del Bello: | 12:12 Correct. |
| 232<br>233<br>234 | Scott Poerschke: 12:14 | Dr. Brenda Hellyer is ... What is<br>chancellor? Is that like the president of<br>the college? |
| 235<br>236 | Vickie Del Bello: | 12:21 Right. She's like the CEO, I guess.<br>She's the top level of the college. |
| 237<br>238 | Scott Poerschke: 12:25 | Okay. Then that has to do, also, with her<br>termination. |
| 239<br>240 | Vickie Del Bello: | 12:33 That has to do with her termination,<br>correct. |
| 241<br>242<br>243 | Scott Poerschke: 12:34 | Okay. And it's not like a concern or<br>grievance, because she could go to Sandra<br>Ramirez, is that right? |

| | | |
|---|---|---|
| 244<br>245<br>246<br>247<br>248 | Vickie Del Bello: | 12:42 Regarding Sergeant Newsome's termination, an employee that is terminated can ask for a secondary review of that termination, and those are handled by Sandra Ramirez. |
| 249 | Scott Poerschke: 12:57 | And that time or still? |
| 250 | Vickie Del Bello: | 12:58 Still. |
| 251 | Scott Poerschke: 12:59 | Okay. So, Sandra is still there? |
| 252 | Vickie Del Bello: | 13:00 Yes. |
| 253<br>254 | Scott Poerschke: 13:01 | Okay. What was involved in that, with the review by Sandra Ramirez? |
| 255<br>256 | Vickie Del Bello: | 13:10 We can go to that because we have all of Sandra's information. |
| 257 | Jessica Witte:    13:16 | Still in tab 17. |
| 258<br>259 | Vickie Del Bello: | 13:17 Still in tab 17. On December 18th, Sandra- |
| 260 | Scott Poerschke: 13:33 | What space number document is that? |
| 261 | Vickie Del Bello: | 13:34 This is 080. |
| 262<br>263 | Scott Poerschke: 13:39 | I always just kind of chop off the last, so it would be 80. |
| 264 | Vickie Del Bello: | 13:42 80? Oh, okay. I wasn't sure how. |
| 265 | Scott Poerschke: 13:44 | Yeah, it has a lot of zeros. |
| 266<br>267<br>268<br>269<br>270<br>271<br>272<br>273<br>274<br>275<br>276<br>277<br>278 | Vickie Del Bello: | 13:49 In that document, Sandra wrote up her findings to Dr. Hellyer based on ... It talked about everyone that she had interviewed in the course in reviewing the evidence and the two issues that she was specifically looking at, so one of them would be whether Newsome stated to Lieutenant Pigeon that someone had read the information in her original statement, and this was apparently regarding Officer Mendoza. And then the issue, too, was whether Newsome was provided an opportunity to respond to the complaint of misconduct. |

| 279 | | Those were the two identifying factors that |
| 280 | | she was reviewing in the secondary review. |

| 281 | Scott Poerschke: 14:47 | Okay. Is the college- |

282

# DEL BELLO EXHIBIT 6

| | | |
|---|---|---|
| 1<br>2<br>3 | Scott Poerschke: 00:00 | ...aware of any other acts taken by Sandra Ramirez that are not reflected, Bates number document 80 through 82. |
| 4<br>5 | Vickie Del Bello: | 00:14 No, other than, I'm not aware of anything other than what's in here. |
| 6<br>7 | Scott Poerschke: 00:18 | Okay. Then, I, you're speaking for the college on that matter. Is that right? |
| 8 | Vickie Del Bello: | 00:23 Yes. |
| 9<br>10 | Scott Poerschke: 00:24 | Okay. What about the, then further reviewed by Brenda Hellyer? |
| 11<br>12<br>13<br>14<br>15<br>16<br>17 | Vickie Del Bello: | 00:36 So, Sandra Ramirez sends her findings to Dr. Hellyer for review. And she also provides a recommendation to Dr. Hellyer. And then Dr. Hellyer will discuss Sandra's review with her and then either make a determination to uphold that recommendation or not. |
| 18<br>19 | Scott Poerschke: 01:07 | Okay. And where was the recommendation that Sandra Ramirez gave to Dr. Hellyer? |
| 20 | Vickie Del Bello: | 01:14 So that's 82. |
| 21<br>22 | Scott Poerschke: 01:16 | Okay. So 80 to 82 is the actual recommendation to ... |
| 23<br>24 | Vickie Del Bello: | 01:21 The findings and the recommendation yes. |
| 25 | Scott Poerschke: 01:22 | Okay. Then, where is the decision. |
| 26<br>27 | Vickie Del Bello: | 01:30 That by, is 463, would be the decision from Dr. Hellyer addressed to Mr. Cagle. |
| 28 | Scott Poerschke: 01:42 | Okay, and who is Mr. Cagle? |
| 29<br>30 | Vickie Del Bello: | 01:45 Apparently it was the attorney for Kendria Newsome. |

| | | |
|---|---|---|
| 31<br>32 | Scott Poerschke: 01:49 | Okay, and what is the college, what did Dr. Brenda Hellyer determine? |
| 33<br>34<br>35<br>36<br>37<br>38<br>39<br>40<br>41<br>42 | Vickie Del Bello: | 01:57 So, Dr. Hellyer upheld the determination and at the time, it says, "Due to the dispute over whether she was given an opportunity to respond to the allegations before the termination was implemented. I have made the decision to adjust Sergeant Newsome Byerly termination date and reinstate her effective November 10th through today." Then she received back pay through that date. |
| 43 | Scott Poerschke: 02:24 | Okay. What was involved in that? |
| 44<br>45 | Vickie Del Bello: | 02:28 From a procedural standpoint or what are you asking, what was involved? |
| 46<br>47 | Scott Poerschke: 02:33 | Just in general, what was going on with that back dating or I guess forward dating? |
| 48<br>49<br>50<br>51<br>52 | Vickie Del Bello: | 02:37 I think that that's going to be more of a question for the chief because it relates to whether or not a complaint was given to Sergeant Newsome and that kind of follows the police policies. |
| 53<br>54<br>55<br>56<br>57<br>58<br>59<br>60<br>61<br>62 | Scott Poerschke: 02:53 | Okay. Is the action taken ... Is it your testimony that Dr. Brenda Hellyer was the individual that was res- ... That the, let me rephrase that again. Is it your testimony here today, correct me if I'm wrong, that the only documentation that Brenda Hellyer reviewed was the recommendation letter written by Sandra Ramirez as reflected on Bates number document 80 to 82? |
| 63<br>64 | Vickie Del Bello: | 03:37 I do not know. I do not know if she was provided additional documentation. |
| 65<br>66<br>67<br>68<br>69<br>70<br>71 | Scott Poerschke: 03:43 | Okay. Is there any policy regarding when Sandra Ramirez, in her role as Vice President of Human Resources, makes a recommendation to Dr. Brenda Hellyer, whether or not what is then Dr. Brenda Hellyer's then goals or what are her responsibilities in that matter? |

Del Bello Exhibit 6                                                                 2

72  Vickie Del Bello:              04:13 So, we do have our secondary review. I
73                                 don't know if it's in here or not. It's
74                                 not?

75  Jessica Witte:   04:18        It's in the online manual though.

76  Vickie Del Bello:              04:20 Okay.

77  Scott Poerschke: 04:22        What's the name of the policy called?
78                                Secondary review?

79  Vickie Del Bello:              04:29 I'll need to look that up. Can I look
80                                it up and ...

81  Scott Poerschke: 04:32        Sure.

82  Vickie Del Bello:              04:33 I mean, I don't know if I can find it.

83  Jessica Witte:   04:35        Do you want to take a break?

84  Scott Poerschke: 04:36        Sure.

85  Vickie Del Bello:              04:37 Okay, then I can ... that'll be good.

86  Scott Poerschke: 04:42        Going off the record at 10:41 AM.

87

# DEL BELLO EXHIBIT 7

| | | |
|---|---|---|
| 1 | David Monroe:    00:01 | Going back on the record at 10:53 AM. |
| 2<br>3 | Scott Poerschke: 00:04 | Okay. Did you have a chance to take a look at that policy we were talking about? |
| 4<br>5<br>6 | Vickie Del Bello: | 00:08 Yes. And it is policy 415 and its termination or demotion of non contractual employees. |
| 7 | Scott Poerschke: 00:21 | Okay. |
| 8<br>9<br>10 | Vickie Del Bello: | 00:23 And within that policy there is a section that speaks about asking for a secondary review. |
| 11<br>12<br>13 | Scott Poerschke: 00:31 | And the secondary review in this instance was the one done by Sandra Ramirez or Brenda Hellyer? |
| 14<br>15<br>16 | Vickie Del Bello: | 00:43 Sandra Ramirez performs the secondary review and then presents her recommendation to Dr. Hellyer. |
| 17<br>18<br>19<br>20 | Scott Poerschke: 00:51 | Alright. What is the factual basis for the statement defendant denies the determination was discriminatory or that the grounds in support our pre textual? |
| 21<br>22<br>23<br>24 | Vickie Del Bello: | 01:22 So my understanding is that the college is stating that Sergeant Newsome was not terminated for a discriminatory reason. It was strictly performance based. |
| 25<br>26 | Scott Poerschke: 01:52 | And what performance, regarding performance based, what does that refer to? |
| 27<br>28<br>29<br>30<br>31<br>32<br>33<br>34 | Vickie Del Bello: | 01:59 So within the termination letter, once again, that's 698, it is speaking of the statement, that Newsome stated that she spoke with Sergeant Bond. And that Sergeant Bond had mentioned that someone had mentioned Kendria's information, so that was part of that performance as for as being, accusing someone that was deemed, |

| | | |
|---|---|---|
| 35 | | that was not substantiated or being falsely |
| 36 | | accused. And then based on that, once |
| 37 | | again, it called into her credibility, |
| 38 | | judgment, professionalism, inability to |
| 39 | | serve as a leader. |

40  Scott Poerschke: 03:10     Anything else?

41  Vickie Del Bello:          03:12 No.

42  Scott Poerschke: 03:32     Okay. So then the last topic area have is
43                             19. It says the means by which San Jacinto
44                             Police Department, or San Jacinto college
45                             can't effectively protect an employee who
46                             works for the police department from
47                             unlawful discrimination or retaliation,
48                             should that officer's supervisor choose to
49                             disregard the law.

50  Vickie Del Bello:          03:59 So once again, that would follow our
51                             complaint process in the fact that
52                             according to our concerns or grievance,
53                             that if an employee believes that they have
54                             been discriminated against, then they would
55                             bring that forward to the next level leader
56                             And that spelled out within that procedure.
57                             And if they are not happy with the next
58                             level leader, then they're able to continue
59                             to take that up their leadership chain. So
60                             we do have those protections in place for
61                             all employees at the college, including the
62                             police department.

63  Scott Poerschke: 04:46     Okay. And that would refer in this instance
64                             then, the next level would be up the chain
65                             of command not the chain I guess, you
66                             didn't say command, but up the chain that
67                             was referring into the appeals process
68                             involved with Ken Lynn at the time period
69                             that Sergeant Newsome was an employee of
70                             the college?

71  Vickie Del Bello:          05:03 Yes.

72  Scott Poerschke: 05:23     Now another, Lieutenant Pigeon was
73                             testifying, he testified that there were
74                             some meetings that the HR department had
75                             about Sergeant Newsome. Do you recall any
76                             meetings between the HR departments and
77                             other members of the police department
78                             about Sergeant Newsome?

Del Bello Exhibit 7                                                    2

| | | |
|---|---|---|
| 79 | Vickie Del Bello: | 05:45 No, the only meeting that I recall is |
| 80 | | the meeting that Gretchen Rapp in had with |
| 81 | | Chief Taylor. But Chief Taylor was the only |
| 82 | | one present at the meeting. |

83  Scott Poerschke: 06:00      Okay. Okay. And then that was, when did
84                              that occur?

85  Vickie Del Bello:  06:07   That would have occurred in September
86                              prior to us issuing Kendria the findings
87                              document.

88  Scott Poerschke: 06:20     Okay. And I believe the findings document
89                              is dated-

90  Vickie Del Bello:  06:20   September 10th.

91  Scott Poerschke: 06:22     Alright.

92  Vickie Del Bello:  06:22   Yes. September 10th.

93  Scott Poerschke: 06:26     Okay. And you met with then Chief Taylor
94                              prior to issuing that September 10th, 2014
95                              document?

96  Vickie Del Bello:  06:37   Yes.

97  Scott Poerschke: 06:40     How did that meeting go?

98  Vickie Del Bello:  06:42   So during that meeting, we'd discuss
99                              really basically the same thing that we
100                             discussed with Kendria. These are the
101                             amount of employees that were interviewed,
102                             here is of the complaint what we
103                             substantiated and what could not be
104                             substantiated and that's basically it.

105 Scott Poerschke: 07:04     Okay. Why did you meet with chief Taylor
106                             before you met with Kendria Newsome?

107 Vickie Del Bello:  07:09   Seems that's the protocol from the
108                             standpoint of you don't really want to call
109                             an employee in without leadership being
110                             aware that you're calling them into human
111                             resources and we also needed to inform
112                             Chief Taylor that we had completed our
113                             investigation.

| | | |
|---|---|---|
| 114<br>115<br>116 | Scott Poerschke: 07:27 | Okay. Any other meetings regarding Sergeant Newsome other than this meeting that happens before September 10th, 2014? |
| 117<br>118 | Vickie Del Bello: | 07:43 I don't recall another meeting regarding Sergeant Newsome. |
| 119<br>120<br>121<br>122 | Scott Poerschke: 07:47 | That could have been with anyone of the departments or anyone at the college really. With Ken Lynn or Gretchen Rapp or Vicky Del Bellow. |
| 123 | Vickie Del Bello: | 08:01 That's me. |
| 124<br>125 | Scott Poerschke: 08:07 | I always see [as like a name on all these documents. |
| 126<br>127<br>128<br>129<br>130<br>131 | Vickie Del Bello: | 08:10 Yes, I mean at some point, I certainly would have met with Gretchen regarding the findings document just to review what they had found. But as far as meeting with Ken, no, I didn't meet with Ken regarding Kendria. |
| 132<br>133<br>134<br>135<br>136 | Scott Poerschke: 08:28 | Okay. Did you ever meet with him Chief Taylor any other time other than that September 10th meeting and then other than the termination meeting? Like almost a year later. |
| 137<br>138<br>139 | Vickie Del Bello: | 08:37 Just regarding Ken, I mean we have other meetings obviously, but not just regarding Kendria, no. |
| 140<br>141 | Scott Poerschke: 08:43 | Okay. At any other meeting did the topic of Sergeant Newsome, Kendria come up? |
| 142 | Vickie Del Bello: | 08:48 I really don't know. That's been- |
| 143 | Scott Poerschke: 08:50 | Okay. |
| 144 | Vickie Del Bello: | 08:51 Along time ago. |
| 145<br>146<br>147<br>148<br>149<br>150<br>151 | Scott Poerschke: 08:52 | And then any other ... I think we've covered face to face meetings. I think we've covered meetings with anyone at the police department about Kendria Newsome. Is there any other, any other chance other than the fact that you saw her at other events, is there anything else that, where |

Del Bello Exhibit 7                                                    4

| 152<br>153<br>154 | | the HR department had any involvement with<br>Kendria Newsome? Other than what was<br>already testified to? |
|---|---|---|
| 155<br>156 | Vickie Del Bello: | 08:52 You're talking about with any other<br>complaints regarding Newsome? |
| 157<br>158<br>159<br>160 | Scott Poerschke: 09:15 | I mean, anything. What's the HR involvement<br>with Kendria Newsome is what I'm trying to<br>get at. Other than what's already testified<br>to- |
| 161<br>162<br>163<br>164<br>165<br>166<br>167<br>168<br>169 | Vickie Del Bello: | 09:22 Right, that's all that, all the<br>specific information. We are always<br>notified whenever there's going to be any<br>type of disciplinary action because it gets<br>sent to us for the personnel file. So we<br>are notified of letters, etc that are<br>coming forward for employees. They're sent<br>to us for the personnel file. So we're<br>involved in that manner. |
| 170<br>171<br>172<br>173 | Scott Poerschke: 10:02 | So I guess in this case, Chief Taylor's<br>corrective action notice as a result of the<br>Rachel Amador incident would have gone into<br>her employee file. |
| 174 | Vickie Del Bello: | 10:13 Yes, mm-hmm (affirmative). |
| 175<br>176<br>177<br>178<br>179 | Scott Poerschke: 10:13 | Okay. I guess then are you aware of<br>anything else other than the events<br>surrounding her termination between the<br>time period of the Amador incident and then<br>the time of her termination? |
| 180<br>181<br>182<br>183<br>184<br>185<br>186<br>187<br>188<br>189<br>190 | Vickie Del Bello: | 10:29 So within the termination, whenever<br>there is a recommendation to terminate,<br>then the first step that the leader does<br>take is they have to notify human<br>resources. Meaning all leadership within<br>their chain that that is something that<br>they are considering. That they are wanting<br>to terminate, and here's The basis for<br>that. So they do inform us of that, that we<br>are not the decision makers on termination<br>that can only occur through Dr. Hellyer. |
| 191<br>192<br>193<br>194 | Scott Poerschke: 11:04 | Okay. So then you're not aware of any other<br>documents then that came for the HR<br>department other than what we've already<br>testified to, is that ... |

| | | |
|---|---|---|
| 195<br>196<br>197<br>198<br>199 | Vickie Del Bello: | 11:17 Well, I believe we have ... there's other documents in here regarding the Mendoza incident also, and her writeup for that. So those would have all come through human resources. |
| 200<br>201<br>202<br>203 | Scott Poerschke: 11:33 | Okay right. There's the Mendoza incident and then I think the chief then issued, Chief Taylor then issued a corrective action notice on that one as well. |
| 204 | Vickie Del Bello: | 11:40 An addendum, right. |
| 205 | Scott Poerschke: 11:40 | Addendum. |
| 206 | Vickie Del Bello: | 11:40 Final notice, mm-hmm (affirmative). |
| 207<br>208<br>209 | Scott Poerschke: 11:42 | Okay. And what was your understanding of that addendum, what that was doing with the Mendoza incident. |
| 210<br>211<br>212<br>213<br>214<br>215<br>216<br>217 | Vickie Del Bello: | 11:48 So at times if there is a final notice already in place and another incident occurs within say a year's frame of time, but that based on that incident alone, the leadership is not prepared to make a decision on termination, then they can issue an addendum to that original final notice. |
| 218<br>219<br>220<br>221<br>222<br>223<br>224 | Scott Poerschke: 12:20 | Okay. Other than the time that Sergeant Newsome came into the HR department and spoke with Tracey Willis, is there any in your capacity as director of the HR department, is there any other time that Sergeant Newsome then reached out to the HR department? |
| 225 | Vickie Del Bello: | 12:40 Not that I recall. |
| 226<br>227 | Scott Poerschke: 12:46 | What about from the standpoint of the HR department as a whole? |
| 228<br>229<br>230<br>231<br>232 | Vickie Del Bello: | 12:51 That I wouldn't know because we're located in different sections and he could, we have many facets to human resources. So she could have reached out on other topics that I wouldn't be aware of. |

233 Scott Poerschke: 13:06    So when you testify from the standpoint of
234                           the knowledge of the agency of the HR
235                           department, not the agency, but the HR
236                           department and you're saying then the HR
237                           department does not know of any other times
238                           where Newsome then reached out to HR.

239 Vickie Del Bello:    13:24 So I would have to clarify that that
240                           would be in my area. I do not know if they
241                           reached out regarding ... They obviously
242                           speak if they're trying to hire an officer
243                           they're speaking with our employment
244                           department.

245 Scott Poerschke: 13:40    Right, but I mean I'm talking about Kendria
246                           Newsome.

247 Vickie Del Bello:    13:42 Right. So she could have reached out
248                           to our employment department because she
249                           could have been hiring an officer as a
250                           Sergeant, but I'm not going to know about
251                           those conversations.

252 Scott Poerschke: 13:52    Okay, what about any time that Sergeant
253                           Newsome reached out about, did she ever
254                           reach out to the HR department about
255                           anythIng regarding Chief Taylor
256                           specifically?

257 Vickie Del Bello:    14:02 That would have been within my area
258                           and I do not recall her reaching out to our
259                           area at all.

260 Scott Poerschke: 14:07    Okay. What about with Lieutenant Pigeon?

261 Vickie Del Bello:    14:10 Only the time that she came in and
262                           spoke to Mrs. Willis, which would have been
263                           in August of 2015.

264 Scott Poerschke: 14:17    Right, but other than that?

265 Vickie Del Bello:    14:18 No.

266 Scott Poerschke: 14:18    You do not know? You're saying no or you
267                           don't know?

268 Vickie Del Bello:    14:23 I'm saying not that I'm aware of.

269 Scott Poerschke: 14:25    Okay.

270   Vickie Del Bello:          14:26 So you're not aware of any other time
271                              other than that August, 2015 time period
272                              that a Kendria Newsome reached out to Tracy
273                              Willis?

274   Scott Poerschke: 14:34    Correct.

275   Vickie Del Bello:          14:35 And I think that would be in terms of
276                              any issues that Kendria Newsome was having
277                              with Chief Taylor, then ...

278

# DEL BELLO EXHIBIT 8

1  Scott Poerschke: 00:02      Which relates specifically to our
2                              employment with the college and problems
3                              that she might be experiencing, then the
4                              only time that you're aware of is that
5                              August 2015 where Kendria Newsome reached
6                              out to Tracey Willis, is that right?

7  Vickie Del Bello:          00:21 Yes.

8  Scott Poerschke: 00:21      Okay. And in terms of if she did reach out
9                              other times, you don't know that
10                             information.

11 Vickie Del Bello:          00:27 Correct. Correct.

12 Scott Poerschke: 00:28      Okay. Pass the witness.

13 Jessica Witte:   00:28      No questions your honor.

14 Scott Poerschke: 00:45      Okay, go off the record.

15 David Monroe:    00:46      All right, going off the record at 11:09
16                             AM. Depo is concluded?

17 Scott Poerschke: 00:52      Depo is concluded.

18 David Monroe:    00:53      All right.

19